†ELEVENTH STREET CHURCH OF CHRIST ET AL. v. PENNINGTON.

1. CIRCUMSTANCES UNDER WHICH A TENDER OF A DEED IS NOT NECESSARY IN ORDER TO PUT VENDEE IN DEFAULT.

Where it is plain that if a deed had been formally tendered by the vendor, it would have been rejected, so that the tender would have been a useless ceremony, and where it appears that the vendor was strenuously insisting that the contract be carried out, such tender of a deed is not necessary in order to put the vendee in default, and is not a condition precedent to an action for specific performance of the contract.

2. JURISDICTION OF CIRCUIT COURT, SITTING AS A COURT OF ERROR IN REVIEWING THE FINDINGS AND DECREE OF THE CHANCELLOR IN THE COURT BELOW.

The circuit court, sitting as a court of error to review the findings and decree of the court below in an equity case has not the same freedom and authority in the premises as if the case were before it on appeal. The conclusions of the court below are entitled to fully as much consideration as those of a jury, where its verdict is under review on error.

3. WHEN A COURT OF EQUITY WILL NOT DECREE SPECIFIC PERFORMANCE.

A court of equity will not decree specific performance where it would be unjust or inequitable to do so.

4. CIRCUMSTANCES WHICH DO NOT CONSTITUTE SUCH LACHES AS WILL PRECLUDE A DECREE OF SPECIFIC PERFORMANCE.

Where the vendor has continuously insisted since the contract was made, that it be performed, and where, though attempts to compromise the matter were made, the vendor has done nothing to indicate that he would forego his right to insist upon specific performance, the failure to bring the action until nearly five years had elapsed since the agreement was made—the delay being caused chiefly by the vendee—does not constitute such laches as will preclude a decree of specific performance, and the intention of the vendee to erect a church upon the land which was the subject of the agreement, and the fact that the vendee has in the meantime, with the knowledge of the vendor, erected its church on other land, and has no use for the land purchased of the vendor, will not defeat the right of the latter to specific performance.

---

†This case was dismissed by the Supreme Court, October 3, 1899, for failure to file printed record, 6 Legal News 149.

5. ORAL EVIDENCE TENDING TO SHOW INCONSISTENT TERMS WITH A WRITTEN IN-
    STRUMENT IS INADMISSIBLE.
        In the absence of such averments of fraud or mistake as would authorize a
        reformation of a written instrument, oral evidence tending to show terms
        inconsistent therewith is inadmissible where it is admitted that the written
        contract is correct so far as it goes, and that the parties signed it voluntarily
        and with full knowledge that the alleged additional terms were not inserted
        therein.

6. RIGHT OF PARTIES TO SHOW ORALLY THAT A CERTAIN CONTRACT CONTAINS
    TERMS WHICH EXCUSE THEIR REFUSAL TO PERFORM.
        Where parties do not desire the enforcement of a reformed contract, but merely
        desire to show (orally) that it contains terms which excuse their refusal to
        perform according to the written contract, it seems that they may avail them-
        selves of this matter defensively without a prayer for reformation.

7. RULES AS TO ADMISSION OF PAROL EVIDENCE TO VARY A WRITTEN CONTRACT.
        The rules as to the admission of parol evidence to vary a written contract are,
        in Ohio, the same at law as in equity, unless the equitable powers of the
        court are invoked upon the ground of fraud or mistake.

8. A TITLE TO BE "MARKETABLE" NEED NOT BE ABSOLUTELY WITHOUT A FLAW.
        It is not necessary, in order that a title may be "marketable," that it be absolutely
        without flaw.

ERROR to the Court of Common Pleas of Lucas county.

PARKER, J.

This action in the court below was by a vendor of real estate against
his vendees to recover the contract price of certain real estate sold, and
to foreclose the vendor's lien upon the premises; in effect, to compel
specific performance and to enforce a claim for the purchase price by a
sale of the premises as upon foreclosure; and a personal judgment was
prayed for. The contract sued upon reads as follows:

"TOLEDO, O., February 1, 1893.

"James B. Pennington hereby sells, and E. J. Cannan, D. L. Matthews,
A. C. Butler, individually and for the Eleventh Street Church of Christ,
of Toledo, Ohio, buy lots 2 and 3, Shaw's Addition to Toledo, Ohio, for
the sum of twenty-four hundred ($2400.00) dollars, on the following
terms: $100 in cash; $500 on May 1, 1893; $600 on October 1, 1894;
$600 on October 1, 1895, and $600 on October 1, 1896, interest at six
per cent. per annum, payable annually, secured by mortgage on prem-
ises conveyed, with privilege of paying any note before due.

"Said purchasers agree to refund the amount of taxes and assess-
ments paid by said Pennington for December, 1892. Opinion of title
furnished by Pennington.

"JAMES B. PENNINGTON by
"C. A. THATCHER, his Atty.,
"EDWIN J. CANNAN,
"D. L. MATTHEWS,
"A. C. BUTLER."

The decree below was in accordance with the prayer of the petition.
Plaintiffs in error contend that there is error in the record in the
following particulars:

First—That the petition does not state and the evidence does not
show that the defendant in error ever tendered a deed to the plaintiffs in
error.

Second—That the evidence discloses that the defendant in error was guilty of such laches in proceeding to enforce specific performance that he ought not now to be permitted to pursue that remedy.

Third—That the court erred in refusing to admit evidence offered on behalf of plaintiffs in error tending to show that there were other terms to the contract in question, not reduced to writing, materially modifying written terms and the rights of the parties herein.

As to the first point, that is, the failure to aver or prove tender of a deed: The petition contains the averment that plaintiff "has in all respects fulfilled and performed all things in said contract to be by him performed, and has at all times been, and is now, ready, able and willing to carry out the same; but that the said defendants have failed and refused to pay any further sum upon said contract, and still refuse to carry out the terms of the same and be bound thereby." The petition also contains the averment, and the evidence shows that the plaintiffs in error had made the down payment of $100 provided for in the contract and had subsequently reimbursed defendant in error on account of certain taxes by him paid on the property which should have been paid by plaintiffs in error, and that plaintiffs in error have not paid anything more under the contract, that is, the part of the $500 due May 1, 1893; the $600 due October 1, 1894; $600 due October 1, 1895, or the $600 due October 1, 1896, or the interest thereon. The pleadings and the evidence clearly show that plaintiffs in error have not at any time since the contract was entered into (unless for a very brief period immediately thereafter) been ready or willing to pay the purchase price or accept a deed, but it shows that, on the other hand, they have been quite unwilling to do either. Whether they have been justified in their attitude and conduct is a question quite aside from that we are now considering, and that question will be discussed hereafter. The justification claimed is that the title was not as clear and perfect as plaintiffs in error were entitled to require, and plaintiffs in error say that this discovery was made in 1893, and that this claim was then and ever since has been insisted upon by them. Edwin J. Cannan, one of the parties to the contract and one of the representatives of the church, testifying on behalf of the plaintiffs in error, says that they notified Mr. Thatcher, the agent of the defendant in error, as soon as the abstract was furnished that the property would not be "needed," and that this was before May, 1893. That when they discovered that the title was not good they tried to drop it immediately. He adds: "We never made any pretense to pay for it after that. All the dealings and action which was taken after that were simply to try to close it up;" that is, as he explains, to settle and adjust the matter upon the basis of not taking the property, but by paying whatever might be required and agreed upon in satisfaction of any claim the defendant in error might have, growing out of the transaction. And in a letter to the defendant in error (which is not dated, but which was written before this suit was begun), this witness urges the defendant in error to release the vendee from the contract upon fair terms, and says: "We can not carry out our agreement." That in all these expressions he voices the sentiments and purposes of all the vendees is apparent. Their resolution to not accept a conveyance of the title to the property and pay the purchase price as agreed, was fixed, and defendant in error was so notified. Proceeding upon this resolution, the church society had purchased a lot elsewhere and built a church edifice upon it, and the property of defendant in error having been purchased for that purpose, the plaintiffs in error had

no further use for it. It is plain that if a deed had been formally tendered, it would have been rejected, so that its tender would have been a useless ceremony. Such tender was not necessary to put the plaintiff in error in default as to the performance of the contract. That defendant in error was strenuously insisting upon the carrying out of the contract and upon all of his rights under it from the time it was made until suit was brought is equally clear. We hold that under those circumstances defendant in error was not required to tender a deed as a condition precedent to the institution of this suit or the granting of the relief afforded by the decree herein.

Second—Was the defendant in error guilty of such laches in not bringing this suit until December 16, 1897, as requires a court of equity to refuse to grant the relief prayed for and granted?

It is urged that the granting of equitable relief by the way of decreeing the specific performance of a contract for the purchase of land is within the discretion of a court of equity; that parties may not demand such relief as an absolute right. But it is conceded—as it must be—that this discretion to grant or refuse such equitable relief is not to be arbitrarily exercised, but it is to be guided by the well-settled principles of equity. In other words, a court of equity will not decree specific performance where it would .be unjust or inequitable to do so. Sitting as a court of error to review the action of the chancellor in this case, we are not at liberty to disturb his findings and decree, unless it shall appear from the record that he has disregarded and violated these principles—that he has abused this discretion. We have not the same freedom and authority in the premises as if the case were here on appeal. The conclusions of the court below upon the facts are entitled to fully as much consideration as those of a jury where its verdict is under review on error. While calling attention to this we do not wish to have it understood that we deem it necessary in this case to invoke any strict rules in favor of the decree in order that it may be sustained. We think the record wholly fails to show any culpable laches on the part of the defendant in error; much less does it show any conduct on his 'part that may have been relied on and acted upon by plaintiffs in error, so that to now decree specific performance would be inequitable. As before stated, defendant in error has strenuously and continuously since the contract was made insisted upon performance. Plaintiffs in error have tried to adjust the matter in difference on the basis of payment of damages, and defendant in error has entertained their propositions, and has made counter propositions in the same line, but all this came to naught. They failed to agree. But it will be observed that defendant in error has not said or done anything to indicate that he would forego his right to insist upon specific performance, unless or until his claim might be otherwise adjusted to his satisfaction.

It appears that soon after plaintiffs in error resolved to not accept this property they built their church upon other lots, and there is some evidence tending to show that defendant in error, or his agent, knew that this church was being built. There is nothing to indicate that the defendant in error, or his agent, in any way promoted the building of this church, or encouraged plaintiffs in error therein, or led them to believe that if they did so they need not accept the other property. Defendant in error, even if he knew this church was being built, could not have prevented or hindered it, and the circumstances did not require him to say or do anything about it. The delay to sue, under the circum-

stances appearing, worked no prejudice to the interests of plaintiffs in error or the right of defendant in error. The delay seems to have been caused chiefly by the solicitations of the plaintiffs in error, and so that they might, by making a re-sale of the property or otherwise, satisfy the demands of the defendant in error, and avoid being brought into court.

Third—Did the court err in excluding the evidence offered by plaintiffs in error of the part of the contract alleged to have rested in parol?

The averments of the answer upon this subject are as follows: "They admit the execution of Exhibit A. attached to said petition (and Exhibit A. is the contract which I have read), and say that the verbal contract hereinafter alleged for the purchase of the real estate described in said petition, is only in part evidenced by said Exhibit A. * * * Defendants further say that on or about the 1st day of February, 1893, plaintiff and defendant, the Eleventh Street Church of Christ, entered into a verbal contract and negotiated for the purchase of the real estate described in the petition, upon the terms mentioned therein in said Exhibit A., but that it was further provided in said contract and understood, promised and agreed, by and between said parties plaintiff and defendant, that plaintiff should furnish said defendant, the Eleventh Street Church of Christ, an abstract of title which was to be entirely satisfactory to them, and the said defendant, the Eleventh Street Church of Christ, soon after the making of said contract; that said opinion of title thus to be furnished by said plaintiff was to show, and plaintiff represented that he had, a good and sufficient and merchantable title to said property, free and clear from all cloud and incumbrance."

Now the evidence offered under this averment was as follows: Counsel for defendants asked the witness, Cannan, this question:

"Q. What was said between the parties in regard to the purchase of the property?"

That was objected to, and then follows some discussion upon the part of counsel and the court, and the court stated some reasons why he thought that was inadmissible, and finally ruled that it was inadmissible, to which exception was taken, and then counsel stated:

"We offer to show that the memorandum marked Exhibit A. in plaintiff's petition was not a contract in full; that it only embraced a few of the terms of the contract, and we offer to show that the contract made was a verbal contract, and was that the opinion of title mentioned in Exhibit A. attached to the petition was to show title in James B. Pennington, the plaintiff, and that it was to be free from all cloud and incumbrances and satisfactory to the defendants, Cannan, Butler and Matthews, and also to the Eleventh Street Church of Christ."

It will be observed that the answer admits the written contract set up by the defendant in error. The offer to prove is in harmony with this admission; there is no attempt to defeat or annul this contract on the ground of fraud or mistake, or any other ground which amounts to an attack upon the integrity of the contract. It is not asserted that the minds of the parties did not meet and agree upon the terms there set down—that it is not their contract, as far as it goes; but the effort is made to show that it does not cover the whole contract—all of the terms agreed upon. That certain material terms as to the title to be made apparent to plaintiff in error and as to its right to determine the sufficiency thereof were omitted from the writing. Why omitted or how omitted is not said. It is not claimed in the pleading that this omission was unintentional on the part of both or either of the parties to the

Church v. Pennington.

agreement. It is not averred that defendant in error fraudulently prevented the insertion of these terms in the writing or that they were omitted through the mistake of the parties or of anybody else.

So far as appears, so far as the averments go, the parties did not intend or wish to have these terms appear in the writing, but signed the written contract voluntarily with full knowledge that these alleged terms were not inserted therein, and that, on the contrary, it contained terms inconsistent therewith; for while the written agreement requires plaintiffs in error to accept a marketable title, the alleged oral agreement would not require them to accept a title that they should in good faith deem unsatisfactory, although it might be marketable.

Now in this state of the pleadings we are satisfied that the court ruled correctly in refusing to admit the evidence offered. We do not say that to make this proffered evidence admissible plaintiffs in error were required to pray for a reformation of the written instrument so as to make it conform to the agreement by them alleged. Since they did not desire the specific enforcement of a reformed contract, but only desired to show that it should contain terms which excused their refusal to accept the title and pay the purchase price, why they could not avail themselves of this matter defensively without a prayer for reformation is not apparent, though there is some authority that seems to require such prayer. If such prayer were required, perhaps the general prayer for "such equitable relief as the court may find them entitled to have," would be sufficient. Upon these questions which have been debated here we do not find it necessary to pass.

But we hold that to make the evidence proffered admissible there must be such averments of fraud or mistake as would authorize a reformation of the instrument, and such averments are not to be found in the answer.

That parol negotiations and agreements of the parties to a written agreement prior to or contemporaneous with its execution are, as against the parties thereto, presumed to be merged therein or purposely excluded therefrom, so that parol evidence of such negotiations or agreements cannot be admitted for the purpose of adding to, subtracting from or varying its terms, is so elementary as not to require the citation of any authority.

That the rules of evidence obtaining upon this subject in Ohio and generally where the English system is in force are the same in courts of equity as in courts of law, unless the equitable powers of the court are invoked upon allegations of fraud or mistake, we regard as well settled by the authorities. We will cite but one or two in Ohio, though the number might be multiplied, and the line is without break or variation. We call attention especially to the case of Monnett v. Monnett, 46 Ohio St., 30, and cases there cited. This was not, it is true, an action in equity, but an effort to introduce parol evidence to vary the terms of a written contract was made; as will appear, and I shall read from the opinion of the court on pages 37 and 38:

"It follows, also, that the court erred in admitting the evidence given by the defendants to contradict the terms of the instrument, and engraft upon it others it did not contain, unless such evidence was competent, under the pleadings, with the view to its reformation.

"We know that the rules which forbid the introduction of parol evidence to control written contracts do not exclude proof of the consideration, or of promises or agreements wholly collateral to the writing, like

agreements between sureties or joint promisors; nor apply where express reference is made in the written instrument to a parol contract, or where the written instrument does not purport to be a complete expression of the contract, or evidently appears to express only some part of it, and that which is sought to be proven does not contradict its terms, but is consistent with them. But the evidence admitted in this case does not fall within either of these classes. Its purpose and tendency were to prove that the instrument did not contain the true agreement between the parties, and to establish a contract materially different from that expressed by it. Such evidence cannot be admitted, except when the reformation of the instrument is sought in equity." Citing a number of authorities, and among them Denton v. Whitney, 31 Ohio St., 89, which was a case where the equity powers of the court were invoked— a case on account. And the court proceeds:

"And the party asking its reformation, must by proper allegations in his pleading show his right to such relief." Citing White v. Denman, 1 Ohio St., 111.

This case does not come within any of the other exceptions to the rule, viz., parol agreement on matters as to which the writing is silent; separate parol agreement constituting condition precedent; subsequent parol agreement to rescind or modify; custom and usage; to show that a transfer absolute upon its face was given in trust, etc.

The case of Quin v. Ruth, 37 Cowen, 16, cited by counsel for plaintiffs in error, as reported, seems to hold that such evidence of other terms resting in parol should be received to vary the terms of a written instrument, where specific performance is sought and where such matter is set up defensively, though there is no allegation of fraud or mistake that would authorize a reformation or setting aside of the written agreement. This, we think, is contrary to the great weight of authority—to the almost uniform holdings of the highest courts—distinctly to the holdings of the Supreme Court of Ohio, and, therefore, we decline to be guided by it. We suspect that some fault in the report of the case is responsible for this apparent anomaly.

It is contended in argument that there were apparent discrepancies in the title sufficient to justify plaintiffs in error in saying that the title was not satisfactory to them; but the title shown approaches perfection closely enough to make it fairly marketable. But few titles will be found, we think, that are so absolutely without flaws that a captious or excessively timid person might not find therein some ground for uneasiness or dissatisfaction. That plaintiffs in error did not withhold payment on the ground that the title was defective, after certain judgments had been released, we think quite evident. Nevertheless, if it had appeared on the trial that the title was in fact defective, defendant in error could not have enforced specific performance, though plaintiffs in error may have theretofore regarded the title as unobjectionable.

We have considered the alleged imperfections in the title, and find that there is no solid foundation for the objections thereto.

We find no error in the record prejudicial to the plaintiffs in error.

The judgment will be affirmed, with costs; reasonable ground certified.

*M. D. Merrick, Stillwell & Duer,* for plaintiff in error.
*Hurd, Brumback & Thatcher,* for defendant in error.